IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OLIVIAH CONSTABLE,

   Plaintiff,

      v.

BAYERISCHE MOTOREN WERKE AG, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:21-CV-2148-TWT

## OPINION AND ORDER

This is a products liability action. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 59] and Motion to Exclude Expert Testimony [Doc. 60]. For the reasons set forth below, the Defendants' Motion for Summary Judgment [Doc. 59] is GRANTED in part and DENIED in part, and their Motion to Exclude Expert Testimony [Doc. 60] is DENIED.

### I.   Background[1]

This case arises from a car accident in which the Plaintiff Oliviah Constable was ejected from the passenger seat of a 2013 BMW 328i (the "subject vehicle") after the passenger door opened as the car flipped and rolled several times. (Defs.' Statement of Undisputed Material Facts ¶ 2). The

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

Defendants Bayerische Motoren Werke AG and BMW of North America, LLC (collectively, "BMW") designed, manufactured, and distributed the subject vehicle, which contains a crash unlock system that unlocks the doors when the front airbags deploy. (*Id.* ¶ 13; Pl.'s Statement of Additional Undisputed Material Facts ¶ 2). Generally, when the airbags deploy, the front doors unlock within about 50 milliseconds of the time the crash unlock system activates. (Defs.' Statement of Undisputed Material Facts ¶ 14). The crash unlock design allows emergency personnel to remove injured passengers from the vehicle who might not otherwise be able to get out on their own volition. (*Id.* ¶ 16).

During the present accident, the Plaintiff was wearing her seatbelt when the crash occurred, but the seatbelt tore during the accident sequence— the parties agree that the seatbelt was not defective. (*Id.* ¶¶ 8–9). The parties also agree that ground contact during the subject vehicle's roll likely caused the passenger door to come open. (*Id.* ¶ 12). At what point the passenger door came open during the accident sequence and at what point the Plaintiff was ejected from the vehicle is unclear. (*Id.* ¶ 11). In this case, the Plaintiff brings defective design and failure to warn claims under negligence and strict products liability theories. (*Id.* ¶ 1). The Defendants now move for summary judgment and to exclude the testimony of one of the Plaintiff's experts.

## II.  Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue

2

of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

"Under Federal Rule of Evidence 702, expert testimony is admissible if (1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014) (quotation marks omitted). The Rules of Evidence require a district judge to take on a gatekeeping function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). "In considering the proffered expert testimony, a trial judge is mindful [that] the burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Chapman*, 766 F.3d at 1304 (quotation marks and

alteration omitted).

### III. Discussion

The Defendants move to exclude the testimony of the Plaintiff's expert Andrew Gilberg and for summary judgment, arguing that Gilberg's opinions fail to meet *Daubert*'s reliability and relevancy requirements, and that their crash unlock design was reasonable as a matter of law. (Br. in Supp. of Defs.' Mot. for Summ. J., at 1–3). In response, the Plaintiff opposes summary judgment and the exclusion of Gilberg's testimony, claiming that Gilberg's opinions satisfy the *Daubert* standard and that genuine disputes of material fact exist as to whether BMW's crash unlock system design constitutes a defect that caused her injuries. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 1–3; Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Exclude, at 6). The Court addresses the Motions to Exclude and for Summary Judgment in turn.

#### A. Motion to Exclude

The Defendants claim that Gilberg's expert opinions are unreliable and therefore inadmissible. Specifically, they take issue with his failure to opine "on how long after an airbag deployment the system should unlock the doors," his failure to review certain crash data, his failure to conduct research on certain rollover accidents, and his failure to perform testing of the crash unlock system to support his opinion on the defect, among other reasons. (Br. in Supp. of Defs.' Mot. to Exclude, at 8–9). They claim that this lack of data and testing to support his opinions on the alleged design defect fails to satisfy the

reliability requirements of Rule 702 and warrants exclusion under *Daubert*. (*Id.* at 9–10). They also claim that Gilberg's reliance on sales literature and owner's manuals is unhelpful to the trier of fact and lacks relevance to his underlying opinion. (*Id.* at 11–13). Finally, they claim that Gilberg's opinions should be excluded under Federal Rule of Evidence 403 because they are likely to prejudice them and confuse the jury. (*Id.* at 13–14).

In response, the Plaintiff offers a host of reasons for why Gilberg's testimony is reliable, relevant, and therefore admissible. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Exclude, at 12–21). First, she refutes the contention that Gilberg was required to do any specific testing at all in support of his expert opinion on the alleged defect. (*Id.* at 12–13 (citing *Kirksey v. Schindler Elevator Corp.*, 2016 WL 5213928, at *11 (S.D. Ala. Sept. 21, 2016))). Then, she clarifies that Gilberg's reliance on the sales literature of other car models was to support his opinion that alternative designs for crash unlock systems were available, considered, and used before BMW designed the subject vehicle. (*Id.* at 13–14). The Plaintiff also highlights the existence of BMW's alternative 2012 design that considered a 6.0 to 6.5 second delay in its crash unlock system, as opposed to its 50.0 millisecond delay in the subject vehicle. (*Id.* at 14–15). And she argues that BMW's 30(b)(6) deponent admitted (1) that a delay between airbag deployment and the door unlocking was possible in the subject vehicle and in prior vehicles; (2) that car doors ideally stay closed during a rollover incident; and (3) that locked car doors are less likely to come open

5

during a rollover. (*Id.* at 15, 19 (citing Schwarz Dep., Doc. 62-2, at 35:22–36:11, 40:22–25, 167:3–9)). Finally, the Plaintiff contends that Gilberg's testimony is both relevant and helpful, and not confusing or misleading, because it will assist the trier of fact in understanding the functionality of the car systems involved, their capabilities, their potential modes of failure, and their relation to the underlying accident in this case. (*Id.* at 21–25).

In reply, the Defendants reiterate their position that expert testimony should be excluded where the proffered expert completed no specific testing to support their opinions on the products at issue. (Reply Br. in Supp. of Defs.' Mot. to Exclude, at 4–5). They argue that Gilberg's design defect opinion lacks both a scientific foundation, due to the absence of any testing or supporting data, and an experiential foundation, due to his alleged lack of prior analysis of crash unlock systems. (*Id.* at 6). They also take issue with Gilberg's alleged lack of analysis pertaining to whether the design defect proximately caused the Plaintiff's injury, and they criticize his opinions as "circular and self-serving." (*Id.* at 8–9).

Having considered the parties' arguments on exclusion, the Court finds that the weight of the evidence here supports the conclusion that Gilberg's testimony is admissible. The Court is aware of no authority "holding that the Federal Rules of Evidence mandate exclusion of an expert's opinion that alternative designs exist unless that expert has personally undertaken to prepare such designs for the product or device at issue." *Kirksey*, 2016 WL

5213928, at *11. And Gilberg's opinions are both reliable and relevant to the underlying design defect claims, particularly considering the evidence showing that the Defendants previously considered a 6.0 to 6.5 second delay for the crash unlock system. As this Court has previously acknowledged, "it is more common that engineering experts state that their opinions are not based upon any scientific method but on general experience and knowledge after a review of evidence." *Reid v. BMW of N. Am.*, 430 F. Supp. 2d 1365, 1370 (N.D. Ga.), *amended on reconsideration in part*, 464 F. Supp. 2d 1267 (N.D. Ga. 2006). Thus, Gilberg's testimony complies with the reliability and relevance requirements under the *Daubert* standard and therefore is admissible.

Between their two briefs, the Defendants cite at least five cases in support of their contention that expert testimony should be excluded where it is unsupported by specific product testing. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 9–10; Reply Br. in Supp. of Defs.' Mot. to Exclude, at 4–5). But none of these cases require the exclusion of Gilberg's testimony here. For example, in *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1321 (11th Cir. 1999), the Eleventh Circuit affirmed the district court's exclusion of an expert in a medical products liability case, reasoning that the testimony was unreliable in part because the expert admitted that the scientific literature did not support his theories—a fact clearly not at issue here. And in *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 985–86 (5th Cir. 1997), the Fifth Circuit affirmed the district court's exclusion of an expert's opinion regarding the unsafe design of a

7

conveyor machine at a gravel wash plant after it allegedly caused the death of the plaintiff's husband. But the court in *Watkins* excluded the proffered expert's testimony because his training was in civil engineering, while the expertise required in the case was mechanical engineering, of which the expert possessed little knowledge. *Id.* at 988. Here, Gilberg has no such gap in knowledge. He has two mechanical engineering degrees, and his nearly fifty years of experience in motor vehicle safety and accident analysis is directly related to the Plaintiff's claims and the issues before this Court. (*See generally* Gilberg Report, Doc. 60-5). Finally, the Southern District of New York, in *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 77 (S.D.N.Y. 2001), excluded expert testimony pertaining to alternative designs for a cigarette lighter, in part because the expert failed to identify any product in the marketplace using his proposed designs. Here, Gilberg has indeed identified other cars in the marketplace that use a more delayed crash unlock feature, as he proposes was feasible in the subject vehicle. These distinct factual postures do not warrant the exclusion of Gilberg's testimony in the present case.

Moreover, the Defendants provide no factual comparison to a case where a court found a lack of fit between an expert's opinions and the underlying facts, as they claim exists between Gilberg's reliance on sales literature and his ultimate expert opinion on the issues in the case. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 11–13). They merely cite *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997), in support of their argument that exclusion is proper

where "there is simply too great an analytical gap between the data and the opinion proffered." The facts giving rise to the expert's exclusion in *Joiner* certainly do not require exclusion in the present case. In *Joiner*, this Court excluded the testimony of an expert who attempted to support his opinions with scientific studies involving the exposure of mice to highly concentrated doses of the toxin to which the plaintiff was allegedly exposed in his workplace on a much smaller scale. *Id.* at 144. Here, however, Gilberg's opinions related to the crash unlock design and his reliance on the sales literature of other car manufacturers are directly related to the Plaintiff's underlying claims and are much less attenuated than the disparity in *Joiner* between the mice study and the plaintiff's exposure to the toxin at work. Accordingly, Gilberg's opinions satisfy the *Daubert* requirements, and his testimony is admissible.

### B. Motion for Summary Judgment

The Defendants contend that even if the Court allows Gilberg's expert testimony, summary judgment is still warranted because BMW's engineering safety choice for its crash unlock system was suitable for its intended purpose and therefore reasonable as a matter of law. (Br. in Supp. of Defs.' Mot. for Summ. J., at 16–18). In response, the Plaintiff argues that with Gilberg's testimony, sufficient evidence of alternative designs exists to support her design defect claim for the crash unlock system at the summary judgment stage. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 20). She withdraws her claims regarding the seatbelt's defectiveness and for the

9

Defendants' failure to warn. (*Id.* at 3 n.3).

Georgia courts "evaluate design defectiveness under a test balancing the risks inherent in a product design against the utility of the product so designed." *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 735 (1994). This "risk-utility analysis" encompasses a variety of factors, *id.* at 736 n.6, but of primary relevance is "the availability of alternative designs, in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design." *Id.* at 735. "The essential inquiry, therefore, is whether the design chosen was a reasonable one from among the feasible choices of which the manufacturer was aware or should have been aware." *Id.* at 736. Finally, the Supreme Court of Georgia has reiterated that the "determination of a product's risks and benefits as a matter of law . . . will rarely be granted in design defect cases." *Ogletree v. Navistar Int'l Transp. Corp.*, 271 Ga. 644, 646 (1999) (quotation marks and citation omitted).

Having found that Gilberg's testimony is properly admissible, the Court concludes that genuine issues of material fact remain as to whether the Defendants crash unlock system design was defective and whether such a defect caused the Plaintiff's injuries. As in the present case, where "there is room for difference of opinion between reasonable [people] as to whether or not negligence should be inferred, the right to draw the inference is peculiarly within the exclusive province of the jury." *Id.* at 647 (citation omitted). Thus,

the Defendants have failed to carry their burden to show the absence of a genuine dispute of material fact as to the Plaintiff's design defect theory.

## IV.   Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Doc. 59] is GRANTED in part and DENIED in part, and their Motion to Exclude Expert Testimony [Doc. 60] is DENIED. Their Motion for Summary Judgment [Doc. 59] is GRANTED as to the Plaintiff's seatbelt defect and failure to warn theories, and it is DENIED as to the Plaintiff's crash unlock system defect theory.

SO ORDERED, this    27th    day of July, 2023.

*[signature]*
THOMAS W. THRASH, JR.
United States District Judge